IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YARELIS HERNANDEZ-ECHEVARRIA, | |
| **Plaintiff,** | |
| v. | CIVIL NO. 13-1757 (JAG) |
| WALGREENS DE PUERTO RICO, INC., | |
| **Defendant.** | |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is a Motion for Summary Judgment under Fed. R. Civ. P. 56 filed on November 21, 2014 by Walgreens de Puerto Rico, Inc. ("Defendant"). Docket No. 26. Plaintiff filed a timely Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") on December 16, 2014. Docket No. 36. Defendant then filed a Reply to Plaintiff's Opposition on January 12, 2015. Docket No. 49. For the reasons outlined below, Defendant's Motion for Summary Judgment is hereby DENIED.  Summary judgment is entered, however, in favor of Plaintiff as to her claim for failure to provide reasonable accommodation.

## FACTUAL BACKGROUND

In early April 2011, Plaintiff Yarelis Hernandez ("Plaintiff") began working for Defendant as a Pharmacy Cashier. Docket Nos. 53-1 at 74 and 36-5 at 3. Shortly after beginning her training, Plaintiff received a copy of Walgreens's Orientation Manual, which emphasizes the importance of attendance and outlines procedures for absence notification and documentation. Docket No.

47-2 at 12-13. Plaintiff trained at the Salinas store, where Guillermo Rios ("Rios") was the Pharmacy Manager and Plaintiff's supervisor. Docket No. 53-1 at 74, 79-80. Defendant concedes that Rios was aggressive toward Plaintiff at the Salinas store, and made her feel nervous and anxious. *Id.* at 80-87.

In May 2011, after finishing her training, Plaintiff transferred to the Ponce Town Center store (the "Ponce" store) to work as a Pharmacy Technician. Docket Nos. 36-5 at 3 and 53-1 at 95. Elaine Objio ("Objio") was the Store Manager of the Ponce store. Docket No. 47-4 at 10. In January 2012, Rios also transferred to the Ponce store as Manager of the Pharmacy Department, where he was responsible for creating and managing the pharmacy technicians' work schedules. Docket No. 36-5 at 3-4.

At some point during Plaintiff's employment at the Ponce store, Plaintiff lost a noticeable amount of weight and developed skin lesions on her face. Docket. No. 36-5 at 11. On one occasion, Plaintiff claims, a pharmacist sent Plaintiff a text message explaining that she was cleaning the counter spaces with disinfectants in case what Plaintiff had was contagious. *Id.* In addition, between July 2011 and July 2012, Walgreens filled various anti-depressive medication prescriptions for Plaintiff. Docket. No. 36-5 at 7-9.

On April 12-15, 2012, Plaintiff was absent from work for a week because her son was kidnapped by his father. Docket No. 53-1 at 109-112. As a result of the absences, Rios suspended Plaintiff on April 19, 2012. Docket No. 56-6. Rios cited noncompliance with the notification and documentation requirements of Walgreens's attendance policy as grounds for the suspension. *Id.* Plaintiff, however, disputes the accusations of noncompliance, arguing that she called and provided documentation for the absences as required. Docket Nos. 53-1 at 108-109 and 36-5 at 13.

Rios admits that he reviewed Plaintiff's personnel file prior to suspending her. Docket No. 36-5 at 14. Plaintiff's personnel file contained an October 11, 2011 medical certificate from Dr. Ruben Rivera ("Dr. Rivera") indicating that she had a history of major depressive disorder and recommending that she not work from October 24 to November 25, 2011. Docket Nos. 36-5 at 5. Defendant, however, claims Rios did not see this medical certificate or any other documents containing information about her depression when he reviewed her file. Docket No. 36-5 at 14.

The day after being suspended, Plaintiff went to speak with Sylvia Castro ("Castro"), District Pharmacy Supervisor, to discuss her suspension. Docket No. 53-1 at 110, 114-117. During the discussion, Castro said she would call Objio to discuss getting Plaintiff psychological treatment under Defendant's Assistance Program, which offers psychological assistance to employees who are undergoing difficult situations at work or in their personal lives. Docket Nos. 53-1 at 116 and 47-2 at 6. Plaintiff contends that she also personally requested psychological help from Objio. Docket No. 53-1 at 119. Objio, however, claims she does not remember either Castro or Plaintiff making a request for psychological benefits. Docket No. 47-4 at 95-97.

On April 23, 2012, Objio emailed Walgreens's Employee Relations Attorney, Frank Bear ("Bear"), a Fact Report regarding Plaintiff's suspension. Docket No. 56-7 at 4. The Fact Report states that Objio and Rios wanted to request a medical certificate from Plaintiff indicating that she could continue her work at the prescription counter. *Id.* Bear responded by asking Rios and Objio to call him, as he worried Plaintiff could claim that, due to her son's kidnapping, she was a victim of domestic violence and that Rios and Objio penalized her for her status as such.. *Id.*

On June 9, Objio signed Plaintiff's application for assistance under Defendant's Benefit Fund. Docket No. 47-2 at 5. More than a month later, on July 13, 2012, District Manager Ada

Civil No. 13-1757 (JAG)                                                                                             4

Colon signed the application. *Id.* The Benefit Fund offers economic assistance to employees with

financial difficulties due to long-term illness, accidents, death, fire, floods, or other disasters.

Docket No. 26-33. Plaintiff's application referenced her hospitalizations in October and

November 2011 as the reason she needed the economic assistance. Docket No. 26-33.

On June 15, 2012, Walgreens issued Plaintiff a disciplinary memo claiming that Plaintiff

had been insubordinate toward Objio and Pharmacist Jessica Santiago ("Santiago") in front of

clients. Docket No. 56-9 at 1-2. The memo also states that Plaintiff violated Defendant's

attendance policy on June 14, 2012 when Plaintiff missed work to attend a court hearing without

permission. *Id.* Plaintiff disputes that she was insubordinate to Objio or Santiago, but does not

dispute that she attended the court hearing even though she did not have permission to go.

Docket No. 53-1 at 145-148.

On July 19-20, 2012, Plaintiff missed work again. *Id.* at 124, 128-129. Plaintiff was

hospitalized on July 20, 2012, at which time she could not work, move, bathe, feed herself,

prepare food, or care for her children. Docket No. 53-1 at 196-198. On July 21, Walgreens received

a medical certificate from Dr. Nellys Arroyo ("Dr. Arroyo"), which stated that Plaintiff could not

work for an indefinite period of time starting July 11. Docket No. 56-10. This medical certificate

did not, however, mention depression or any emotional condition. Docket. No. 56-10.

On July 23, 2012, Rios emailed Bear a Fact Report recommending Plaintiff's termination

due to her continuous violations to Walgreens's attendance policy. Docket No. 56-11.  On July

25, Bear replied that he agreed with the decision to dismiss Plaintiff based on her "pattern of

excessive absences." Docket No. 36-5 at 16. As with Plaintiff's suspension, Rios admits that he

reviewed Plaintiff's personnel file prior to recommending her termination, but claims he did not see any medical documents mentioning Plaintiff's depression. *Id.*

On July 26, 2012, Plaintiff submitted a medical certificate from Dr. Edgardo Baez ("Dr. Baez") recommending that she follow up with a psychiatrist and stay out of work until August 13, 2012. Docket Nos. 53-1 at 204 and 56-20. Plaintiff then submitted a medical certificate from another doctor, Dr. Urda Santiago ("Dr. Santiago"), extending her leave through August 31, 2012. Docket No. 56-12. Finally, Plaintiff submitted another medical certificate from Dr. Rivera, which explained that she had major depressive disorder and recommended that she resume working on September 1, 2012 with "reasonable accommodation so that she can perform her work." Docket No. 56-13.

On August 28, 2012, Plaintiff's request for economic assistance under Walgreens's Benefit Fund was approved and a check was issued for $2,741.39. Docket No. 26-34. Plaintiff, however, never received the check. Docket No. 47-4 at 56-57. Objio contends that she did not give Plaintiff the check because she and Rios made the decision to terminate Plaintiff on July 25, 2012, that is, before the benefit was approved. *Id.*

On August 29, 2012, Plaintiff wrote to Walgreens to request accommodation upon her return to work. Docket Nos. 56-14 and 56-15. Plaintiff requested a transfer to another store and a schedule adjustment to allow her to attend therapy from 11 AM to 12 PM on Tuesdays and Thursdays for nine weeks. *Id.* Walgreens, however, did not transfer Plaintiff and scheduled her to work during the hours she requested to go to therapy. Docket No. 36-5 at 20-21.

On September 3, Plaintiff returned to work for a full shift. Docket No. 36-5 at 21. On September 4, 2012, Rios notified Plaintiff that he and Objio had made the decision to terminate

her. Docket No. 53-2 at 141-142. The termination document cites excessive absences and tardiness as grounds for her dismissal. Docket No. 56-16. Rios admits that at the termination meeting, he told Plaintiff that she could not continue to work at Walgreens because of her "condition" and the fact that she was "overwhelming the other employees" with her absences. Docket. No. 53-1 at 103-105. Rios also admits that Plaintiff then told him that she was sick and that her medical certificates justified her absences. *Id.* Rios, however, replied that the decision had already been made. *Id.*

Plaintiff contends that when she was working at Walgreens, Rios did not treat her like he treated others and humiliated her on several occasions. Docket Nos. 53-1 at 102-103, 167-171 and 56-21. Plaintiff claims that Rios often shouted at her, looked at what she was doing, and told her she could not work at Walgreens if she could not do two or three things at once. *Id.* at 168-171. Plaintiff claims that on one occasion, Rios shouted at her while she was on the phone with a client and that Rios proceeded to take the call from Plaintiff. *Id.* Plaintiff avers that on another occasion, Rios acted rude toward Plaintiff while she was trying to help a patient whose prescription had not been filled by the time of pick up. *Id.* at 171-176.

On January 10, 2013, Plaintiff filed a disability discrimination charge before the EEOC. Docket No. 56-21. On October 22, 2013, Plaintiff filed an Amended Complaint asserting claims of disability discrimination and disability harassment under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the Puerto Rico Law Against Discrimination of Disabled Persons, 1 P.R. Law Ann. §§ 501 *et seq.* ("Law 44"). Docket No. 3. Defendant filed the pending Motion for Summary Judgment on November 21, 2014, alleging, *inter alia*, that (1) Plaintiff failed

to establish the elements of her claims; (2) Walgreens has articulated legitimate, non-discriminatory reasons for the various employment-related decisions; and (3) Plaintiff cannot establish that Walgreens's reasons constitute pretext. *Id.* On January 12, 2015, Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"). Docket No. 49. Plaintiff counters that the evidence in the record shows that there are genuine issues of material fact as to whether Defendant's reasons for its employment decisions were pretext for discrimination. *Id.* Plaintiff also claims she has established the elements of her various claims, thereby precluding summary judgment in favor of Defendant. *Id.*

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant carries the initial burden of proving an absence of a genuine, material fact by identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate such absence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the nonmovant may only survive summary judgment by "present[ing] definite, competent evidence to rebut the motion." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). Such evidence must prove the existence of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.*, 985 F.2d 46, 48 (1st Cir. 1990).

A "genuine" issue is one that can only be resolved only by a finder of fact because "it may reasonably be resolved in favor of either party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "material" fact, in turn, is one that can affect the outcome of the case. *Id.* (quoting *Anderson*, 477 U.S. at 248). In identifying whether a genuine issue of material fact exists, courts "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may grant summary judgment if the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Smith v. Stratus Computer, Inc.* 40 F.3d 11, 13 (1st Cir. 1994) (citing *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir 1993)). Moreover, the nonmoving party may only survive summary judgment by presenting evidence in support of the existence of genuine issues of fact that warrant the celebration of a trial. *Maldonado-Denis*, 23 F.3d at 581. Throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *Anderson*, 477 U.S. at 255.

## ANALYSIS

I.    **Federal Law Claims – ADA**

  A.  **Disability Discrimination**

A plaintiff may prove her discrimination case by presenting direct evidence of discrimination or proving it indirectly "by using the *prima facie* case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Ramos-Echevarria v. Pichis*,

Inc., 659 F.3d 182, 186 (1st Cir. 2011) (quoting *Katz v. City Metal Co., Inc.*, 87 F.3d 26, n.2 (1st Cir. 1996)). A plaintiff alleging disability discrimination must first establish, as part of her *prima facie* case, that she was "(1) disabled within the meaning of the ADA; (2) qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) discharged or otherwise adversely affected in whole or in part because of her disability." *Jones v. Nationwide Life Ins.*, 696 F.3d 78, 86-87 (1st Cir. 2012). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to put forth a legitimate, non-discriminatory reason for its adverse employment decision and to produce credible evidence in support of its non-discriminatory reason. *Freadman v. Metropolitan Property and Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007) (citing *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 105 (1st Cir. 2005)). If the defendant offers such a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to put forth evidence proving that the defendant's reason is "mere pretext, cloaking discriminatory animus." *Id.*.

1. **First Element of the *Prima Facie* Case - Disabled Within the Meaning of the ADA**

Disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1) (2012). Regarding the first definition, Defendant argues that Plaintiff is not disabled because she does not have a mental impairment that substantially limits any major life activities. Docket No. 26-2 at 9. Plaintiff counters that she does have a mental impairment that substantially limits several

life activities since her ability to work, concentrate, think, take care of herself, do housework, eat, and sleep, was severely impaired due to her major depressive disorder.  Docket No. 36 at 19.

To survive a motion for summary judgment in ADA cases, a plaintiff "must proffer evidence from which a reasonable inference can be drawn that [a major life] activity is substantially or materially limited." *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 24 (1st Cir. 2002) (citing *Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1207 (8th Cir. 1997)). Major life activities are those that are "of central importance to most people's daily lives." *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). An individual is "substantially limited" in a major life activity when she "faces significant obstacles" in participating in the activity, regardless of whether or not the obstacles are "insurmountable." *Gillen*, 283 F.3d at 22.

In the instant case, Defendant incorrectly avers that since Plaintiff's depression did not substantially limit any major life activities during *all* alleged discriminatory acts, Plaintiff's mental impairment did not constitute a disability under the ADA. Docket No. 26-2 at 9-10. In fact, Defendant's inquiry into whether Plaintiff was substantially limited during some or all discriminatory acts is irrelevant. *See e.g. Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 22 (holding that "an impairment can substantially limit a major life activity, even though the plaintiff is still able to engage in the activity to some extent").

The parties agree that Plaintiff was unable to work when she was hospitalized for her depression in October and November of 2011 and on July 20, 2012. Docket No. 53-1 at 194-198. Furthermore, Plaintiff obtained medical certificates from three different doctors stating that she was not able to work for more than a month after her July 20 hospitalization due to her depression. Docket Nos. 56-20, 56-12, 56-13. Finally, Plaintiff also had a history of taking

antidepressants during her time working at Walgreens. Docket No. 36-5 at 7-9. Therefore, the evidence in the record shows that Plaintiff's depression substantially limited Plaintiff's major life activity of working and thus, that Plaintiff is disabled within the meaning of the ADA. *See Calero-Cerezo*, 355 F.3d at 21 (recognizing that working may be considered a major life activity for ADA purposes and that a finder of fact could "easily determine" from the record that the plaintiff suffered a qualified mental impairment due to depression when the plaintiff has had "a history of depression, diagnosis of depression by at least two physicians, antidepressant medication, numerous required medical leaves from work, and partial hospitalizations"). Thus, the Court finds that Plaintiff has satisfied the first element of her *prima facie* case.[1]

### 2.  Second Element of the *Prima Facie* Case– Qualified Status

Defendant argues that Plaintiff is not a qualified individual under the ADA because Plaintiff could not regularly attend work. Docket No. 26-2 at 15. According to Defendant, since Walgreens's Orientation Manual states that attendance is the most important job function of every employee, Plaintiff's absences render her unqualified to perform the essential functions of her job with or without reasonable accommodation. Docket No. 26-2 at 15.

Plaintiff, in turn, claims that Defendant relies too heavily on the generalization that attendance is an essential function of any job without providing any specific analysis. Docket No. 36 at 28. Plaintiff contends that she was qualified to perform the essential functions of her

---

[1] Since the Court finds that Plaintiff satisfies the first element of her prima facie case by showing that she had a physical or mental impairment that substantially limited one or more major life activities, the Court need not determine whether Plaintiff has a record of such an impairment or was regarded as having such an impairment.

job with the reasonable accommodation of her medical absences. *Id.* Plaintiff also cites precedent holding that absences for medical treatment may be reasonable accommodation in certain circumstances. *Id.* at 28. In addition, Plaintiff states that to accept Defendant's argument would mean that the ADA does not protect individuals who are forced to be absent from work as a result of an incapacitating condition, a result that cannot be reconciled with the purpose of the ADA. *Id.*

The analysis of an employee's qualified status is a two-step process. *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011). First, the employee must show that she has the "requisite skill, experience, education, and other job-related requirements for the position." *Id.* Second, the employee must show that she is able to "perform the position's essential functions with or without reasonable accommodation." *Id.* at 32-33. An employer's "good-faith view of what a job entails, though important, is not dispositive." *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 25 (1st Cir. 2002). Furthermore, the ADA explicitly recognizes that "job restructuring" and "part-time or modified work schedules" may be reasonable accommodations. *Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998) (citing 42 U.S.C. § 12111(9)). As such, an employer needs to produce evidence showing that granting a scheduling accommodation is unreasonable. *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 37 (1st Cir. 2000) (holding that an employer's failure to show that a scheduling accommodation for an arthritic employee was unreasonable precluded entry of summary judgment in favor of the employer).

In its analysis of Plaintiff's qualified status, Defendant does not contest that Plaintiff has the skill, experience, and education required to be a Pharmacy Technician at Walgreens. Docket

No. 26-2 at 15-16. Defendant also does not contest that Plaintiff was able to perform the essential functions of her job aside from attending work. Docket Nos. 26-2 at 15-16 and 26-6. Instead, Defendant cites the Orientation Manual's emphasis on the importance of attendance as proof that Plaintiff does not meet the second element of the qualified individual test. Docket Nos. 26-2 at 15-16 and 26-6.[2] However, when there is a connection between an employee's conduct and her disability, a finding against the employee because of her conduct is "improper." *Ward*, 209 F.3d at 38 (reversing the grant of summary judgment against an employee plaintiff whose tardiness "flow[ed] directly from" his arthritis). In the present case, many of Plaintiff's absences were due to her disability and, thus, it cannot be said that the absences are proof that Plaintiff was not qualified. Furthermore, since the ADA recognizes "modified work schedules" as a reasonable accommodation, *see Criado*, 145 F.3d at 443, Walgreens had the burden of proffering evidence to show that granting such scheduling accommodation was unreasonable. Since Defendant failed to provide such evidence, the Court refuses to grant summary judgment on the basis that Plaintiff is not a qualified individual within the meaning of the ADA.[3]

───────────────

[2] While courts "generally give substantial weight to the employer's view of job requirements," *Ward*, 209 F.3d at 35, it cannot be seriously argued that work attendance is "the most important function" of Plaintiff's job. This characterization of Plaintiff's Pharmacy Technician position is simply disingenuous and merely seeks to circumvent the proper qualification analysis.

[3] The Court need not provide extensive analysis regarding whether Plaintiff meets the third element of her *prima facie* case, that is, whether the adverse employment action was "because of" her disability. Plaintiff met her burden of showing that the adverse employment action was triggered "in whole or in part" by her disability. *Katz v. Metal Co., Inc.*, 87 F.3d 26, 33 (1st Cir. 1996) (holding that a jury could find that an adverse employment action was "because of" plaintiff's disability if the disability was even a "motivating factor" in the adverse employment action). Plaintiff proffered the following evidence to show that Rios and Objio may have known about her disability and acted because of it: (1) Rios reviewed Plaintiff's file before suspending and terminating her; (2) Rios and Objio recommended in Plaintiff's suspension letter that Plaintiff produce a medical certificate stating that she was able to work; (3) Rios told Plaintiff that she could not do her job "because of [her] condition"; and (4) Plaintiff lost a noticeable

### 3. Defendant's Legitimate, Non-Discriminatory Reasons for Adverse Employment Actions and Whether Such Reasons are Pretext

As mentioned above, once a plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision and accompanying evidence in support of such reason. *Freadman*, 484 F.3d at 99. If the defendant offers such a reason and supporting evidence, the burden then shifts back to the plaintiff to proffer evidence proving that the defendant's reason is pretext for discrimination. *Id.* At the summary judgment phase, however, "courts should not unduly complicate matters . . . by applying legal rules which were devised to govern the basic allocation of burdens and order of proof." *Id.* (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991)). Instead, the focus should be on "whether, viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the [adverse employment action] was motivated by . . . discrimination." *Id.* at 431.

First, Rios and Objio state that they suspended Plaintiff because of her absences during her son's kidnapping. Docket No. 26-2 at 18. This, however, does not explain why they recommended in their Suspension Letter that Plaintiff provide a medical certificate stating that she is able to work. Docket No. 56-6. Second, Defendant claims Plaintiff did not receive

_____

amount of weight and developed lesions on her face during her employment at the Ponce store. Docket Nos. 36-5 at 11-16, 56-6, 53-1 at 103-105. Defendant's argument to the contrary rests on the incorrect assumption that Plaintiff needs to establish that her disability was *the* determinative factor in the adverse employment actions. Docket No. 26-2 at 18-23. The Court, therefore, finds that Plaintiff meets the third element of her *prima facie* case.

psychological assistance because she did not request it, but Plaintiff states that she spoke directly to both Castro and Objio about obtaining such assistance. Docket Nos. 26-2 at 18-19 and 53-1 at 114-119. Third, Defendant argues that Objio did not give Plaintiff the economic benefit check because she and Rios made the decision to terminate her before the benefit was approved, but Plaintiff was not notified of her termination until September 4, 2012, and there also may have been a delay in the processing of the check due District Manager Ada Colon not signing the application until more than a month after Objio signed it. Docket Nos. 26-2 at 19-20, 56-16, and 47-2 at 5. Finally, Defendant states that Rios and Objio terminated Plaintiff not only for her absences and tardiness, but also for poor performance, erroneous prescription dispensing, and insubordination. Docket No. 26-2 at 21-22. Nevertheless, the termination document only cites absences and tardiness as grounds for the termination. Docket No. 56-16.

Such "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions in [Defendant's] proffered legitimate reasons" could lead a "reasonable factfinder" to find that the reasons are pretext. *Id. See also Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) (holding that when a company gives "different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual"). Therefore, as there is a genuine issue of material fact as to whether Rios and Objio knew about Plaintiff's disability at the time of the alleged discriminatory acts, a "reasonable factfinder could rationally find" the reasons that Defendant has provided "unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662-663 (1st Cir. 2010) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). As such, the Court hereby denies summary judgment as to Plaintiff's discrimination claims.

### B. Failure to Accommodate

Defendant also argues that Plaintiff's failure to accommodate claim must be dismissed because Plaintiff made her request for accommodation on August 29, 2012, by which time Rios and Objio had already decided to terminate her. Docket No. 26-2 at 25. Plaintiff disputes Defendant's contention that her requests for accommodation were made after the decision to terminate her, since she was not in fact terminated until September 4, 2012. Docket No. 36 at 34.

The ADA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the [entity's] business." *Freadman*, 484 F.3d at 102 (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a reasonable accommodation claim, a plaintiff must show (1) that she suffers from a disability under the ADA, (2) that she is an "otherwise qualified individual," and (3) that the defendant employer knew about her disability and failed to provide reasonable accommodation. *Valle-Arce v. Puerto Rico Ports Authority*, 651 F.3d 190, 198 (1st Cir. 2011). An employer's duty to accommodate is triggered by a request from an employee. *Freadman*, 484 F.3d at 102.

Having established that Plaintiff met the first two prongs of her reasonable accommodation claim, *see* Part A of Analysis section, we turn our attention to the third prong. Defendant does not argue that Rios and Objio were unaware of Plaintiff's disability on August 29, 2012 —the date Plaintiff made her request for accommodation. Docket No. 26-2 at 24-25. Instead, Defendant contends that it had no duty to accommodate Plaintiff because Rios and Objio made the decision to terminate her on July 25, 2012, which was before Plaintiff made the

accommodation request. Docket No. 26-2 at 25. Nonetheless, Defendant's contention that she was actually terminated before she made her accommodation request is untenable.[4]

First, Defendant fails to allege, let alone prove, that Plaintiff knew or should have known that she was terminated before she made her accommodation request. Indeed, the parties agree that Plaintiff was not notified of her termination until September 4, 2012. Docket No. 56-16. Since the termination of an employee requires a notification of said decision, it follows that the evidence clearly indicates that Plaintiff was not in fact terminated until September 4, 2012, which was well after she made her request for reasonable accommodation. *See Chardon v. Fernandez*, 454 U.S. 6 (1981) (operating under the assumption that an employee is not terminated until she receives notification). Furthermore, since Plaintiff worked for a full day on September 3, 2012, it is simply not true that she was in fact terminated on July 25, 2012. *See Delaware State College v. Ricks*, 449 U.S. 250 (1980) (finding that an employee cannot be terminated before her last working day). Thus, even assuming *arguendo* that Rios and Objio made the decision to terminate Plaintiff on July 25, such date is irrelevant because it is clear that she was terminated on September 4, after she made her accommodation request.

Furthermore, while Defendant asserts that Rios and Objio did not know about Plaintiff's disability when they made the decision to terminate her, it does not dispute that Rios and Objio knew about Plaintiff's disability on August 29, 2012 —when she made her accommodation

---

[4] The Court also notes that Defendant offers no evidence showing that Rios and Objio did, in fact, make the decision to terminate Plaintiff on July 25. Bear's email approving of the decision to terminate Plaintiff on July 25 does not indicate that Rios and Objio actually decided to terminate her that day.

request. Docket Nos. 26-24, 26-25, and 26-2 at 25.[5]  On July 26, 2012, Plaintiff gave Defendant a medical certificate from Dr. Baez recommending that she follow up with a psychiatrist. Docket No. 56-20. Plaintiff later submitted a medical certificate dated August 27, 2012 from Dr. Rivera indicating that she had major depressive disorder. Docket No. 56-13.  In light of this evidence and Defendant's failure to dispute their knowledge of it as of August 29, the Court finds that it is uncontested that Rios and Objio were aware of her disability when Plaintiff made her accommodation request. Thus, Plaintiff has proffered sufficient evidence to meet the third prong of her failure to accommodate claim, that is, that Defendant knew about Plaintiff's disability and failed to provide reasonable accommodation. As such, the Court hereby enters judgment as a matter of law in favor of Plaintiff as to this claim, pursuant to Fed. R. Civ. P. 56(f).[6]

## C.  Harassment

The First Circuit has "assum[ed] without decid[ing] that disability harassment is a viable theory of recovery." *McDonough v. Donahoe*, 673 F.3d 41, 46 n. 9 (1st Cir. 2012) (citing *Quiles-*

---

[5] Rios's and Objio's Unsworn Statements Under Penalty of Perjury only state that "when the decision to terminate Mrs. Yarelis Hernandez was made, I did not know she had any emotional condition, nor did I perceive her as having such." Docket Nos. 26-24 and 26-25.

[6] Since Defendant moved for summary judgment on Plaintiff's failure to accommodate claim, it follows that Defendant had the affirmative burden to produce evidence showing the absence of a genuine issue of material fact and that it was entitled to judgment as a matter of law with respect to this claim. Even if Defendant was not on notice that summary judgment could be entered in favor of Plaintiff, Defendant, as the moving party, had the duty to support its position as a matter of law and therefore had "a chance [in accordance with the rules] to present its evidence on the essential elements of the claim." *Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010) (quoting *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir. 1996)). *See also P.R. Electric Power Auth. v. Action Refund*, 515 F.3d 57, 64 (1st Cir. 2008).

*Quiles v. Henderson*, 439 F.3d 1, 5 n. 1 (1st Cir. 2006)).[7] In order to make a valid disability-based harassment claim, a plaintiff must prove that: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her disability or disabilities; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers v. Southern Regional Physician Svcs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). From this standard, it follows that the disability harassment must be severe enough to alter employment conditions and create a hostile work environment. *Id.* In deciding whether a work environment is abusive, courts "must consider the entirety of the evidence presented at trial, including 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

In the case at hand, the Court has already established that Plaintiff meets the first element of her harassment claim, that is, that Plaintiff is disabled under the ADA and thus belongs to a protected group. *See* Part A1 of Analysis section. Furthermore, Defendant does not contest that Plaintiff has established the second element of her harassment claim —that she was

---

[7] Plaintiff seems to use the terms "harassment" and "hostile work environment" interchangeably, *see* Docket Nos. 3 at 13, 17 and 26-2 at 26-30 and 36 at 35-37, but the analysis is slightly different under each category. *Compare Flowers v. Southern Regional Physician Svcs., Inc.*, 247 F.3d 229, 235 (5st Cir. 2001) (articulating the standards for disability-based harassment claims) and *O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001) (articulating the standards for hostile work environment claims). The Court assumes that Plaintiff intended to make a harassment claim, as the analysis in her Opposition parallels the harassment analysis set out in *Flowers*, 247 F.3d at 235.

subjected to unwelcome harassment. Indeed, the evidence in the record shows that she may have been harassed, since Plaintiff claims in her deposition that Rios was aggressive and forceful with her. Docket. No. 53-1 at 168-171.

With respect to the third element of Plaintiff's claim, the Court finds that there is a genuine issue of material fact as to whether Rios knew about Plaintiff's disability or regarded her as disabled during the period in which the alleged harassment took place, so it cannot be said that the alleged harassment was not based on Plaintiff's disability. *See* Docket Nos. 26-24 and 53-1 at 216-217. As previously discussed, *see* Footnote 3, since Rios (1) reviewed Plaintiff's file before suspending and terminating her, (2) recommended in Plaintiff's suspension letter that Plaintiff produce a medical certificate stating that she was able to work, and (3) told Plaintiff that she could not do her job "because of [her] condition," a reasonable factfinder could conclude that Rios knew that Plaintiff was disabled or regarded her as disabled during the relevant time period. Docket Nos. 36-5 at 11-16, 56-6. Since it is unclear whether Rios knew of Plaintiff' disability, the Court finds that the alleged harassment —Rios constant shouting at Plaintiff, watching what she was doing, making threats about her job, and intercepting her phone call with a patient— may have been based on her disability. *See Flowers*, 247 F.3d at 236 (holding that there is evidence of disability-based harassment when a supervisor hovers around an employee's work area, eavesdrops on her conversations, and intercepts her phone calls).

With regards to the fourth element of Plaintiff's *prima facie* case —that the alleged harassment affected a term, condition, or privilege or employment— the evidence in the record shows that Plaintiff has met her burden of proof. Plaintiff avers that the events on which her discrimination claims were based —her suspension, denial of psychological benefits, denial of

economic assistance, termination, and failure to provide reasonable accommodation— are also various examples of ways in which Plaintiff was harassed based on her disability to the point of it affecting the conditions of her employment. Docket No. 36 at 36-37. Since she was deprived of several benefits during her employment with Walgreens and was eventually terminated, Plaintiff has provided enough evidence to show that she meets the fourth element of her prima facie case. *See Flowers*, 247 F.3d at 237 (finding that being put on probation and being discharged affect the terms, conditions, and privileges of employment).

Finally, in terms of the fifth element of Plaintiff's *prima facie* case, Defendant failed to show that there are no genuine issues of material fact as to whether Walgreens knew or should have known about Plaintiff's harassment. Defendant argues that since Plaintiff did not follow the procedures in the Orientation Manual for reporting harassment, there is no reason Defendant should have known about it. Docket No. 26-2 at 30.[8] The Court, however, is not convinced that an employee must necessarily follow these prescribed steps for reporting harassment for Defendant to learn about incidents of harassment. The Court agrees with Plaintiff that Castro may have known about the harassment since Plaintiff claims she told her about it, and that Bear may have known about it since he expressed fear in his April 23, 2012 email that Plaintiff could make a discrimination claim. Docket Nos. 53-1 at 106 and 56-7. As such, summary judgment as to Plaintiff's disability-based harassment claim is denied.

---

[8] Defendant also makes arguments regarding being exempt from vicarious liability for employers, but such arguments are based on Title VII hostile work environment claims and do not necessarily fit into the disability-based harassment claim articulated by the Fifth Circuit.

II.   **Puerto Rico Law 44 Claims**

Law 44 prohibits public and private institutions from discriminating against the disabled. *Torres-Alman v. Verizon Wireless P.R., Inc.*, 522 F. Supp. 2d 367, 401 (D.P.R. 2007) (citing P.R. Laws Ann., tit. 1 § 504). In fact, Law 44 was "modeled after the ADA" in order to "harmonize Puerto Rico law with the federal statutory provisions of the ADA." *Id.* (citing *Arce v. ARAMARK Corp.*, 239 F. Supp. 2d 153, (D.P.R. 2003)). Therefore, the standards of proof for claims under Law 44 are basically the same as those for claims under the ADA. *Zayas v. Commonwealth of P.R.*, 378 F. Supp. 2d 13, 24 (D.P.R. 2005). Accordingly, per the foregoing discussion, summary judgment is denied as to Plaintiff's Puerto Rico Law 44 claim.[9]

CONCLUSION

For the reasons outlined above, the Court hereby DENIES Defendant's Motion for Summary Judgment in its entirety. Nevertheless, the Court hereby enters summary judgment in favor of Plaintiff as to her claim for failure to provide reasonable accommodation.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of July, 2015.

                                                          s/ Jay A. Garcia-Gregory
                                                          JAY A. GARCIA-GREGORY
                                                          United States District Judge

---

[9] It should also be noted that the parties did not make any new arguments in regards to Puerto Rico Law 44, adopting their ADA arguments to their Law 44 claims. Docket Nos. 26-2 at 30 and 36 at 37. As such, the Court need not provide new analysis for the Law 44 claims.