IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YARELIS HERNANDEZ-ECHEVARRIA,<br><br>**Plaintiff,**<br><br>v.<br><br>WALGREENS DE PUERTO RICO, INC.,<br><br>**Defendants.** | **CIVIL NO.** 13-1757(JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

On July 15, 2015, the Court denied a Motion for Summary Judgment filed by Walgreens de Puerto Rico, Inc. ("Defendant") and entered summary judgment in favor of Yarelis Hernandez-Echevarria ("Plaintiff") only as to her claim for failure to provide reasonable accommodation. Docket No. 62. Pending before the Court is a Motion for Reconsideration filed on July 21, 2015 by Defendant. Docket No. 66. Plaintiff filed a timely Opposition to the Motion for Reconsideration on July 30, 2015. Docket No. 75. For the reasons outlined below, Defendant's Motion for Reconsideration is granted in part and denied in part.

**DISCUSSION**

Rather than concise and direct, Defendant opted to be largely repetitive throughout its thirty-one page Motion for Reconsideration. First, Defendant claims that the Court's *sua sponte* grant of summary judgment in favor of Plaintiff as to her failure to accommodate

claim violated Defendant's due process rights. Docket No. 66 at 2-7. Second, Defendant argues that the record establishes that Guillermo Rios ("Rios"), Elaine Objio ("Objio"), and Frank Bear ("Bear") made the decision to terminate Plaintiff on July 25, 2012. *Id.* at 7-12. Third, Defendant contends that it did not have a duty to entertain Plaintiff's request for reasonable accommodation because Rios and Objio had already made the decision to terminate her. *Id.* at 12-17. Fourth, Defendant asserts that the Court established various facts as uncontested, although these were never conceded or admitted. *Id.* at 18-21.

Fifth, Defendant claims that the Court erroneously concluded that Plaintiff was a qualified individual with a disability under the Americans with Disabilities Act ("ADA"). *Id.* at 21-24. Sixth, Defendant suggests that the Court erroneously held that an ADA plaintiff need only show that her disability was *a* motivating factor, as opposed to *the* motivating factor, of the alleged adverse decision. *Id.* at 24-27. Seventh, Defendant argues that the Court failed to properly analyze its non-discriminatory reasons for Plaintiff's termination. *Id.* at 27. Finally, Defendant asserts that the Court erroneously concluded that the *Faragher/Ellerth* defense to Plaintiff's disability-based harassment did not apply in this case. *Id.* at 27- 29. With this in mind, the Court now proceeds to analyze the parties' arguments concerning the July 15 Opinion and Order.

### I. Establishing Facts for Purposes of the Motion for Summary Judgment

Defendant argues on several occasions that the Court has made "unsupported and spontaneous conclusions" that have effectively deprived Defendant of a fair opportunity to present its evidence at trial. *See, e.g.*, *id.* at 5-6. According to Defendant, the Court has committed a "manifest injustice" in establishing certain facts as undisputed beyond the

summary judgment context. *See id.* at 7. Defendant also states that the Court's findings have caused an "immediate and extreme prejudice and harm" to its position by prejudging matters that belong to a jury. *Id.* at 6.

The Court disagrees with Defendant's characterization of the Opinion and Order's analysis. Far from being "unsupported" or "spontaneous," the Court's conclusions were properly grounded in the summary judgment record as developed by the parties. Whether it was because of strategy, negligence, or lack of evidence, the Court notes that Defendant conceded or failed to oppose many facts that made particularly clear that Defendant was not entitled to judgment as a matter of law. Interestingly enough, Defendant included a somewhat vague and ambiguous footnote indicating that "[a]ny statement of fact which would be contrary to Walgreens' position in this case are exclusively taken as true for the limited purpose of the instant motion for summary judgment." Docket No. 26 at 1 n.1. In other words, Defendant seems to claim that its concessions or omissions should only be considered for summary judgment purposes.

Despite the footnote's vagueness, the Court recognizes that Defendant is entitled to assume Plaintiff's version of the facts as true and still ask the Court to enter summary judgment in its favor. The Court also understands Defendant's concerns that any finding or conclusion beyond the summary judgment context could affect Defendant's ability to present its case at trial. Fed. R. Civ. P. 56 allows courts to "properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial." Fed. R. Civ. P. 56(g) advisory committee's note. In light of Defendant's footnote, this might be such a case. Therefore, the Court would like to clarify that its analysis of the

record in the instant case was only for purposes of Defendant's Motion for Summary Judgment. *Id.* ("Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.").

## II. *Sua Sponte* Grant of Summary Judgment – Failure to Accommodate Claim

### Notice and Procedural Prejudice

Defendant claims that the Court's grant of summary judgment in favor of Plaintiff as to her failure to accommodate claim violated Defendant's due process rights. Specifically, Defendant indicates that the Court expressly recognized in its July 15 Opinion and Order that no notice was provided. *Id.* at 3. According to Defendant, the absence of notice is sufficient grounds for reversal. *Id.* Both statements are false.

First, the Court never acknowledged that Defendant did not have notice. The Court merely stated that "[*e*]*ven if* Defendant was not on notice that summary judgment could be entered in favor of Plaintiff, Defendant, as the moving party, had the duty to support its position as a matter of law and therefore had a chance . . . to present its evidence on the essential elements of the claim." Docket No. 62 at 18 n.6 (citations omitted) (internal quotation marks omitted) (emphasis added). Second and more importantly, lack of notice by itself is not sufficient grounds for reversal. As Plaintiff correctly points out in her Opposition, Defendant failed to show that it was procedurally prejudiced by the lack of adequate notice. Docket No. 75 at 4. The First Circuit has clearly stated that if the party was not deprived of the opportunity "to present evidence in support of its position as a result of

the unfair surprise," then it follows that the "failure to provide notice is harmless error and a remand would be futile." *P.R. Electric Power Auth. v. Action Refund*, 515 F.3d 57, 64 (1st Cir. 2008); *see also Vives v. Fajardo*, 472 F.3d 19, 22 (1st Cir. 2007).

In the instant case, Defendant moved for summary judgment as to this very claim and, thus, had both the opportunity and duty to demonstrate that it was entitled to judgment as a matter of law. Moreover, in its Motion for Summary Judgment, Defendant discussed each of the elements of Plaintiff's failure to accommodate claim at length. *See* Docket No. 26. Finally, Defendant's position becomes even less credible considering that Defendant filed a Motion for Reconsideration that once again discusses at length Plaintiff's failure to accommodate claim. *See* Docket No. 66 at 2-18. Therefore, the Court disagrees with Defendant's contention that its due process rights were violated.

### Analysis of Plaintiff's Failure to Accommodate Claim

As the Court's July 15 Opinion and Order clearly states, a plaintiff asserting a reasonable accommodation claim must show that (1) she is a disabled individual under the ADA, (2) that is otherwise qualified, and (3) "that the defendant employer knew about her disability and failed to provide reasonable accommodation." Docket No. 62 at 16 (citing *Valle Arce v. Puerto Rico Ports Authority*, 651 F.3d 190, 198 (1st Cir. 2011). The Court found then that there was sufficient evidence in the record to conclude at this stage that Plaintiff was both disabled and qualified within the meaning of the ADA. *Id.* at 16.

In its Motion for Reconsideration, Defendant argues that the Court concluded that since Plaintiff had a mental impairment, it necessarily followed that she was substantially limited from performing major life activities and, thus, disabled within the ADA's meaning. Docket No. 66 at 22. This cannot be further from the truth. The Court clearly considered

Plaintiff's evidence that her major depressive disorder affected "her ability to work, concentrate, think, take care of herself, do housework, eat, and sleep." Docket No. 62 at 9-10. Defendant even admits that Plaintiff was substantially limited in several major life activities, particularly her inability to work. *See* Docket No. 26-1 at 6. Defendant now claims that because Plaintiff was working prior to her termination and during some of the alleged adverse acts, she was not substantially limited. Docket No. 66 at 22. Defendant's argument, however, misses the point. It is clearly established that "an impairment can substantially limit a major life activity, *even though the plaintiff is still able to engage in the activity to some extent.*" *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 22 (1st Cir. 2004). Such is the case here. *See* ADA Amendment Act, 110 P.L. § 2(b)(5), 122 Stat. 3553, 3354 (2008) (stating that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis").

The Court did not consider necessary in its July 15 Opinion and Order to determine whether Plaintiff was disabled under the ADA under the last two prongs —namely, whether she had a "record of" her mental impairment or whether she was "regard as" having such an impairment. Docket No. 62 at 9 (citing 42 U.S.C. § 12102). Given Defendant's position with respect to the Court's disability analysis, the Court would like to add that there is sufficient evidence in the record —i.e., medical certificates, statements by fellow employees, history of antidepressants, and hospitalization—to find that Plaintiff either had a record of depression or was regarded as having a disability. This evidence was discussed extensively throughout the July 15 Opinion and Order.

With respect to the Court's qualification analysis, Defendant essentially rehashes those arguments already raised in its Motion for Summary Judgment. Docket No. 66 at 23-

24. Since an absolute majority of Plaintiff's absences were due to her disability, it would be improper and illogical to consider these absences as proof that Plaintiff was not qualified to perform her job functions. Docket No. 62 at 13. The Court already addressed these arguments and will not repeat itself.

Since there is sufficient evidence in the record for Plaintiff to show that she was both disabled and qualified within the meaning of the ADA, the Court must now determine whether Plaintiff can establish the third element of her reasonable accommodation claim —namely, whether Defendant knew about Plaintiff's disability and failed to provide reasonable accommodation. The Court entered summary judgment in favor of Plaintiff as to her reasonable accommodation claim on the basis that Defendant failed to dispute its knowledge of Plaintiff's medical condition when she made her request for reasonable accommodation. *Id.* at 18. In doing so, the Court essentially found certain facts as established beyond the summary judgment context. The Court, however, recognizes that the *sua sponte* entry of summary judgment cannot be reconciled with the Court's finding in the July 15 Opinion and Order that there is a genuine issue of fact as to whether Rios and Objio knew about Plaintiff's disability at the time of the various alleged discriminatory acts. *Id.* at 15.

Given the Court's decision that it will not find facts as established pursuant to Fed. R. Civ. P. 56(g), the Court hereby reverses its decision to enter summary judgment in favor of Plaintiff as to this claim. Since Plaintiff has proffered evidence of medical certificates dated prior to July 29, 2012, it follows that Defendant is not entitled to judgment as a matter of law and it is for the jury to decide whether Defendant had knowledge of Plaintiff's disability when she made the request for reasonable accommodation and when she was terminated.

Civil No. 13-1757 (JAG)                                                                                                    8

Moreover, Defendant will have "the opportunity to show that the proposed accommodation would impose an undue hardship." *Valle-Arce*, 651 F.3d at 198 n.7 (citing *Freadman v. Metro Prop. & Cas. Ins. Co.*, 484 F.3d 91, 103 (1st Cir. 2007)).

### Plaintiff's Termination and Defendant's Duty to Accommodate

Defendant argues that it is entitled to judgment as a matter of law as to this claim because there was no duty to entertain Plaintiff's request for accommodation once Rios and Objio made the decision to terminate her. Docket No. 66 at 12-17. The Court once again rejects this argument. First, as stated in the Court's July 15 Opinion and Order, Defendant's position that Rios and Objio made the decision to terminate Plaintiff on July 25 is unsupported by the record. Docket No. 62 at 17 n.4. Contrary to Defendant's allegations, the Court *never* made any determination as to the date in which the decision was made. The Court only assumed *arguendo* that the decision was made on July 25. *Id.* In its Motion for Reconsideration, Defendants provide a five-page chart with evidence that allegedly shows that the decision to terminate Plaintiff was in fact made on July 25. Docket No. 66 at 9-12. Nonetheless, Bear's July 25 email agreeing with Rios and Objio's position that Plaintiff should be terminated does not in fact show that the decision to terminate Plaintiff was made then. It is certainly possible that Rios and Objio could have changed their mind, especially considering the fact that Plaintiff was not notified of her termination until September 4. Therefore, there is a genuine issue of fact as to when Rios and Objio made the decision to terminate Plaintiff. This issue of fact, however, is immaterial.[1]

---

[1] Plaintiff claims that no reasonable jury can conclude that the decision to terminate her was made by July 25, 2012. Docket No. 75 at 10. Not only did Plaintiff fail to make this argument in her Opposition to Defendant's Motion for Summary Judgment, but also, it completely misses the point. A jury could certainly conclude from Bear's email that Rios and Objio made the decision to terminate Plaintiff on July 25. Interestingly enough, Plaintiff fails to argue that Defendant had a duty to entertain her request for accommodation because she was not effectively terminated at the time when she made the request.

As the Court already stated, the date of the decision is immaterial since Plaintiff was not notified of her termination until September 4, well after she made her request for reasonable accommodation and even after she was allowed to come to work after her leave of absence. Docket No. 62 at 17. Defendant cites various cases for the proposition that it did not have a duty to entertain Plaintiff's request because Rios and Objio had already made the decision to terminate her.[2] These cases, however, do not stand for Defendant's proposition. In fact, Defendant's reading of these cases is perplexing. These cases are easily distinguishable and, if anything, support the Court's analysis.

In *Green v. Medco Health Solutions of Texas, LLC*, the plaintiff was awaiting the results of her final appeal to receive short-term disability benefits "to determine if any of [her] absences would be deemed excused and thus her termination unwarranted under the [company's] attendance policy." 947 F. Supp. 2d 712, 728 (N.D. Tex. 2013). It was clear in that case that "Plaintiff was *effectively terminated*, when her appeal was denied." *Id.* (emphasis added). Since the plaintiff filed her request for accommodations "five days after she learned that none of her absences would be excused," the court found in *Green* that her request was untimely and that defendant did not have a duty to entertain plaintiff's request. *Id.* In the instant case, there is no evidence that Plaintiff was "effectively terminated" *or* had reason to know that she was "effectively terminated" at the time when she requested accommodations. It cannot be seriously argued that a "decision" to terminate an employee constitutes an "effective termination" of said employee, especially when there is no evidence that the employee had notice of the adverse decision.[3]

---

[2] None of these cases are binding U.S. Supreme Court or First Circuit decisions.
[3] By "decision," Defendant seems to mean nothing more than the subjective choice that Plaintiff had to be terminated. It follows that there was no concrete act of termination in this case until Plaintiff was notified of

Unlike the plaintiff in *Green*, Plaintiff was allowed to return from her leave of absence prior to her effective termination. Therefore, *Green* bolsters this Court's analysis and directly contradicts Defendant's position. *See also Cash v. Siegel-Robert, Inc.*, 2012 WL 36, 2012 WL 36466 at *16 (W.D. Tenn. Aug. 24, 2012) ("Because [the employee] had been effectively terminated when he requested the reasonable accommodation, his accommodation request was untimely, and Defendant's failure to consider it did not violate the ADA.").

Defendant also relies on *Scott v. Memorial Sloan Kettering Cancer Ctr.*, 190 F. Supp. 2d 590 (S.D.N.Y. 2002). The Court is surprised to see Defendant citing *Scott* considering how detrimental it is to its position. In *Scott*, the court found that the employee's request for accommodation was untimely after she was administratively terminated and the employer had already sent her final paycheck with accrued vacation nearly two months before the request was made. Unlike Defendant's vague "decision" to terminate Plaintiff, the employer's concrete actions in *Scott* clearly evince that the employee "had already been terminated before she requested the accommodation." Under such circumstances, the employee's failure to receive notice of the termination is immaterial. In the instant case, however, Defendant has failed to show similar concrete actions that would allow a reasonable factfinder to conclude that Plaintiff was effectively terminated.

The third case Defendant cites is *Tuszkiewicz v. Allen-Bradley Co.*, 1998 WL 123985 (7th Cir. Mar. 17, 1998). In this case, the Seventh Circuit merely held that plaintiff's arguments on appeal were waived. *Id.* at *4. The Seventh Circuit raised questions about whether or not the employee properly raised the failure to accommodate claim since he did

---

the "decision" on September 4. Therefore, Defendant's position is especially worrisome considering that an employer may easily change its mind about an employee's future.

not specifically mentioned such claim his EEOC charge. *Id.* at *2. It is clear that the Seventh Circuit in *Tuszkiewicz* did not reach the merits of the case and instead dismissed the appeal on procedural grounds —namely, that plaintiff waived the argument that the employer failed to consider his accommodation request while he was subject to a disciplinary process for ethics violations. *Id.* at *1-3. It follows that this decision cannot be possibly relied upon for the proposition that Defendant had no duty to entertain Plaintiff's request in the instant case.

The last case that Defendant cites to support its position is my Opinion and Order in *Salamo-Martinez v. Celulares Telefonica, Inc.*, 272 F. Supp. 2d 144 (D.P.R. 2003). This case, however, has nothing to do with a failure to accommodate claim. There is no discussion of whether an employee was denied accommodation or whether an employer had to even consider such a request. The case merely states that the employer articulated a legitimate reason to terminate its employee and, therefore, I found that no reasonable factfinder could find that the employee was terminated in *retaliation* for his request for reasonable accommodation. *Id.* at 152. Since retaliation claims require that the employer's motive and intent to terminate the employee be discriminatory, —i.e., but for causation— it follows that my holding in *Salamo-Martinez* was specific to the analysis of plaintiff's retaliation claim and does not apply to the instant case. *Id.*

In conclusion, in the absence of any evidence showing that Plaintiff was effectively terminated prior to making her accommodation request, the "date of the decision" is immaterial as a matter of law. Nonetheless, at the very least, a jury must still decide whether Defendant had knowledge of Plaintiff's disability when she made her request for

reasonable accommodation and when she was terminated. Therefore, Defendant is not entitled to judgment as a matter of law as to this claim.

III. **Causation in ADA Cases: Disability as "a" factor or as "the" factor**

This section in Defendant's Motion for Reconsideration merely rehashes those arguments already raised in its Motion for Summary Judgment. Defendant contends that the Court erroneously concluded that in ADA cases a plaintiff can establish a disability discrimination claim if the disability was *a motivating factor* as opposed to *the motivating factor* for the alleged adverse action. Docket No. 66 at 24-27. Defendant criticizes the Court's reliance on a 1996 decision —*Katz v. Metal Co., Inc.*, 87 F.3d 26 (1st Cir. 1996)— to hold that a plaintiff need only show that the adverse employment action was triggered "in whole or in part" by her disability. Docket No. 62 at 13 (quoting *Katz*, 87 F.3d at 33). According to Defendant, the Supreme Court has held that a plaintiff's disability must be *the* motivating factor in the employer's adverse employment action. Defendant relies on the Supreme Court's decision in *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) as authority for this proposition. Docket No. 66 at 24.

Defendant reads *Nassar* to hold that the ADA prohibits discrimination "because of [an individual's] disability." *Id.* (quoting *Nassar*, 133 S. Ct. at 2531). Defendant claims that the Supreme Court's use of the words "because of" necessarily entails that ADA requires a showing that an employee's disability was the reason that the employer decided to act. *Id.* at 24-25. Defendant reaches this conclusion in light of the Supreme Court's analysis in age discrimination cases under the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id.* (citing *Gross v. FBL Fin Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009)) (holding that "the ordinary meaning of the ADEA's requirement that an employer took adverse action

Case 3:13-cv-01757-JAG   Document 79   Filed 08/04/15   Page 13 of 19
Civil No. 13-1757 (JAG)                                                                        13

'because of' age is that age was the 'reason' that the employer decided to act"). Since the Court in *Gross* held that "[t]o establish a disparate treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision," Defendant contends that the Supreme Court extended the same standard to ADA claims. *Id.* at 24-27.

While Defendant's argument is certainly creative and innovative, it is wrong as a matter of law. The Supreme Court in *Nassar* addressed the standard of causation for Title VII retaliation claims. In doing so, the Supreme Court held that Title VII retaliation claims must be proved according to traditional principles of "but-for" causation, as opposed to the lessened causation test used for Title VII status-based discrimination claims. *Nassar*, 133 S. Ct. at 2522-2534. A plaintiff's burden under this lessened causation test consists of showing that the discriminatory motive was only one of the employer's motives, even if there were other legitimate and non-discriminatory reasons for the adverse employment decision. *See id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). It follows that the Supreme Court's reference in *Nassar* to the ADA's prohibition of disability discrimination is nothing more than dicta. As such, this Court is not bound to follow dicta regarding an issue that was not fully debated and addressed by the Supreme Court. *See Central Va. Community College v. Katz*, 546 U.S. 356, 363 (2006); *see also United States v. Rubin*, 609 F.2d 51, 69 (2d Cir. 1979) (Friendly, J., concurring) ("A judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold'.").

Nonetheless, while the language of the ADA is similar to that of the retaliation provision in Title VII, a closer look at the ADA's text and its legislative history illustrates

that Congress intended the ADA's discrimination provision to operate in a similar manner as Title VII's status-based discrimination provision. The ADA provides in relevant part that "no covered entity shall discriminate against a qualified individual *on the basis of* disability." 42 U.S.C. § 12112(a) (emphasis added). Unlike the ADEA's "but for" causation standard, the First Circuit has interpreted the ADA to only require disability to be a motivating factor. *See Katz*, 87 F.3d 26.

Defendant seems to argue that the Supreme Court's dictum in *Nassar* effectively overruled the First Circuit's cases on this issue. Courts, however, "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Gross*, 557 U.S. at 174. With this in mind, I join other courts in rejecting Defendant's position for various reasons. *See, e.g.*, *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 977 F. Supp. 2d 1058 (D. Or. 2013); *Thompson v. Donahoe*, 961 F. Supp. 2d 1017 (N.D. Cal. 2013).

First, in 2008, Congress amended the ADA to ensure that it is broadly applied to plaintiffs' disability discrimination claims. For example, Congress amended "the causation language for ADA discrimination from 'because of' to 'on the basis of' . . . therefore, making the ADA discrimination claim less similar to a Title VII retaliation claim." *Siring*, 977 F. Supp. 2d at 1062 (citing ADA Amendments Act of 2008, Pub. L. No. 110–325, § 5(a), 122 Stat. 3553). It is well established that "[w]hen Congress amends one statutory provision but not another, it is presumed to have acted intentionally." *Gross*, 557 U.S. at 174. Therefore, the amendments to the ADA's text not only broadened the statute's application in favor of plaintiffs, but also illustrated Congress's rejection of a heightened causation test, such as the "but for" test used in the ADEA claims and Title VII retaliation cases.

Second, the legislative history directly contradicts Defendant's position. The House Report on the 2008 ADA Amendments explains that the changed language anticipates and permits the use of "indirect evidence" and "mixed motives" in ADA discrimination cases. *Id.* at 1062-1063 (citing H.R. Rep. 110–730(I) "Discrimination on the Basis of Disability" (2008)). In addition, the Report explains that Congress intended the ADA to "mirror the structure of nondiscrimination protection in Title VII of the Civil Rights Act." *Id.* It follows that *Nassar* has not changed the causation test for ADA's discrimination claims.

This analysis becomes even more forceful considering that, despite the Supreme Court's decision in *Gross*, the First Circuit has continued to hold that a plaintiff need only establish that she was "adversely affected *in whole or in part* because of [her] disability." *Jones v. Nationwide Life Ins.*, 696 F.3d 78, 86-87 (1st Cir. 2012) (emphasis added) (citations omitted). Therefore, "[i]n the absence of a clear indication that *Nassar* applies to [ADA discrimination claims], this Court will follow existing [First Circuit] precedent" and apply the lessened causation test typical of Title VII status-based discrimination cases — namely, that the plaintiff's disability need only be a motivating factor for the adverse employment action. *Siring*, 977 F. Supp. 2d at 1062-1063.[4] Given the evidence in the instant case, it still remains to be seen whether Plaintiff was adversely affected in whole or in part because of her disability. A jury must decide whether Defendant was aware of Plaintiff's disability during the alleged adverse acts and whether Defendant acted pursuant to such knowledge.

### IV. Disability-Based Harassment

---

[4] The Court notes that Defendant failed to cite any cases in which courts have found *Nassar* to require "but for" causation for ADA discrimination claims.

Defendant argues that there is no evidence in the record that could indicate any knowledge of the alleged disability-based harassment. Docket No. 66 at 27-28. This argument was already rejected in the July 15 Opinion and Order. Docket No. 62 at 18-21. It suffices to say at this moment that a jury must decide whether the evidence presented shows that Defendant was aware of any disability-based harassment.

Defendant also claims that the Court erroneously concluded in its July 15 Opinion and Order that Defendant's *Faragher/Ellerth* defense regarding the vicarious liability of employers was inapplicable in the instant case. Docket No. 66 at 28-29. Defendant correctly points out that the *Faragher/Ellerth* defense relies on common law principles of *respondeat superior* liability and, thus, does not exclusively apply to Title VII cases. *Id.* at 29. According to Defendant, the Court's mistake was to hold that said defense does not extend to ADA cases. *Id.* While this Court's statement could have been clearer, that is not what the Court said. The Court, rather, meant to point out that the *Faragher/Ellerth* defense is often invoked in hostile work environment claims, but not necessarily in harassment claims. Docket No. 62 at 21 n. 8.

The Court noted in its Opinion and Order that Plaintiff used the terms "harassment" and hostile work environment" interchangeably. Some circuits, such as the Fourth and the Fifth Circuits, actively distinguish harassment claims from hostile work environment claims. The First Circuit has not addressed this distinction and has merely "assum[ed] without decid[ing] that disability harassment is a viable theory of recovery." *McDonough v. Donahoe,* 673 F.3d 41, 46 n.9 (1st Cir. 2012) (citation omitted). Harassment and hostile work environment claims are identical with the exception of their fifth element. In harassment claims, a plaintiff must establish that "the employer knew or should have

known about the harassment and failed to take prompt, remedial action." *Flowers v. Southern Regional Physicians Svcs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). On the other hand, a plaintiff making a hostile work environment claim must establish that "some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen.Motors Corp.*, 247F.3d 169, 177 (4th Cir. 2001).

Given this difference, it would make sense for the *Faragher/Ellerth* defense — which deals with an employer's vicarious liability— to apply to hostile work environment claims, but not necessarily in harassment cases. *See Gonzalez v. Sears Holding Co.*, 980 F. Supp. 2d 170, 208 (D.P.R. 2013) (analyzing the employer's *Faragher/Ellerth* defense to plaintiff's hostile work environment claim).[5] Nonetheless, since Plaintiff uses the terms "harassment" and hostile work environment" interchangeably and the First Circuit has not addressed the legal distinctions between these two types of claims, the Court will now proceed to analyze Defendant's argument.

Employers can be liable for the actions of their employees and supervisors through the common law principles of agency and *respondeat superior*. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Nonetheless, in cases where the harassing employee is the plaintiff's supervisor, the employer may assert a defense under the *Faragher/Ellerth* doctrine to avoid liability. *See id.* Under this doctrine, the employer must establish: (1) that it "exercised reasonable care to prevent and correct promptly any . . . harassing behavior, *and* (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective

---

[5] Since Plaintiff relied on the *Flowers* framework, the Court assumed in its July 15 Opinion and Order that Plaintiff intended to make a disability harassment claim. Docket No. 62 at 21 n. 8. Nonetheless, the Court notes that Plaintiff also goes back and forth in its Opposition to Defendant's Motion for Reconsideration and once again uses the terms "harassment" and "hostile work environment" interchangeably. *See* Docket No. 75 at 20.

opportunities provided by the employer or to avoid harm otherwise." *Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 32 (1st Cir. 2003) (emphasis added). Since the employer must establish both elements to avoid liability through this affirmative defense, it necessarily follows that summary judgment for Defendant would only be proper if "the raw facts are undisputed or assumed in favor of [Plaintiff]" —that is, if no reasonably jury could decide [either of these two elements] in the plaintiff's favor." *Id.* at 34 (citation omitted).

Defendant claims that it had in place a policy against harassment. Docket No. 26-2 at 30. According to Defendant, since Plaintiff was aware of said policy and never complained about the alleged harassment from Rios, it follows that the defense applies and Plaintiff failed to state a claim. *Id.* There are several problems with this position. First, it is well established that "[n]o affirmative defense is available . . . when the supervisor's harassment *culminates in* a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Gonzalez,* 980 F. Supp. 2d at 210 (quoting *Faragher*, 524 U.S. at 808) (emphasis added). This is precisely what Plaintiff claims in this case —that, *inter alia*, Rios and Objio terminated her on the basis of her disability. There is plenty of evidence in the record as to those effects, hence why Defendant's Motion for Summary Judgment was denied. *See* Docket No. 62 at 20 (finding that Plaintiff proffered sufficient evidence indicating that the alleged harassment did affect a term, condition, or privilege of employment). Contrary to Defendant's position, the alleged harassment act need not be itself a tangible employment action, but rather only culminate in one. *See Faragher*, 524 U.S. at 808.[6] Since an employer is vicariously liable, "when a supervisor takes a tangible

---

[6] In the alternative, Defendant claims without much specificity or analysis that "the alleged harassment acts were not tangible employment actions." This argument is conclusory and lacks substance. "Judges are not expected to be mindreaders, thus, . . . a litigant has an obligation to spell out its arguments *squarely and distinctly*, or else forever

employment action," it follows that the defense does not apply in the instant case and, thus, Defendant is not entitled to judgment as a matter of law as to this claim. *Faragher*, 524 U.S. at 790; *Ellerth*, 524 U.S. at 762.

## CONCLUSION

For the reasons stated above, the Court hereby grants in part and denies in part Defendant's Motion for Reconsideration. The deadlines for the Joint Pretrial Memorandum, Pretrial/Settlement Conference, and Jury Trial will remain as set.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 4th day of August, 2015.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge

---

hold its peace." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (internal citations omitted). It follows that the defense was inadequately presented and waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").